| iLABORDE, Judge.
One individual joined forces in a business enterprise with another who was related by marriage. The company failed. Plaintiff now seeks reimbursement of the money she posted at the firm’s inception, plus penal damages and attorney fees. The trial judge found no fraud or bad faith on defendants’ parts, and no failure to comply with various securities registration requirements owing to the nature of the enterprise. We affirm.
Facts
By the end of 1984, Louisiana’s construction industry had slowed. Among the victims of the downturn were Barbara and Charles Kibodeaux who, to their credit, tried to find a business in which Charles might participate. Charles was underemployed due to the economic slowdown; Barbara was a guidance counselor at a middle school and therefore largely recession proof.
Barbara Kibodeaux and her husband learned that Ms. Harrison’s enterprise, Motion Cargo International, Inc., sold Mitsubishi forklifts and that Mitsubishi was interested in having a branch opened in Lake Charles. Ultimately, the two women agreed to open a minority-owned venture named Motion Cargo International of Lake Charles, Inc. Ms. Kibodeaux would pay $40,000 and Ms. Harrison would provide expertise.
After the Kibodeauxs learned that the Lake Charles company would not actually own any real assets at the end of the company’s | ¿first year, they threatened to withdraw from negotiations. At this point, Harrison offered them to withdraw their $40,000 investment and cancel the deal; alternately, she offered them four forklifts for inventory, at cost or less, to operate the Lake Charles business independently of defendants. They opted for neither course, choosing instead to forge ahead with the original deal.
Papers were drawn up and signed by the parties. Ms. Harrison would serve as president of the fledgling entity; Ms. Kibodeaux would serve as vice president, and Mr. Kibo-deaux would serve as secretary-treasurer. Additionally, Charles Kibodeaux would be the full-time day-to-day general manager of the business under the terms of his one year employment contract with the company. Although Ms. Harrison originally sought a controlling interest of the company, ownership was eventually divided evenly between the women, with each to have an option to buy out the other for $50,000 one year after the date of their agreement.
Arguments and Posture on Appeal
Plaintiff alleges that defendant Catherine Harrison did not honor her end of the bargain requiring assistance to the fledgling Lake Charles company, converted to her personal use plaintiff’s $40,000 investment which was intended for the joint enterprises’s bene *505 fits, and did not comply with various securities laws designed specifically for her protection.
The trial court found no merit in any of these contentions, and our exhaustive review of the record reveals no basis for reversal. The trial judge was not manifestly erroneous.
Breach of Contract
In her first argument, plaintiff complains that defendant did not honor her end of the bargain.
The minutes of the first board meeting indicates that the shares of stock issued to each of the women were paid for “in cash or in kind.” The buy-sell agreement between them required Ms. Kibodeaux to pay $40,000 and for Ms. Harrison to provide expertise and to induce the Baton Rouge entity to provide the new concern “a subfranehise dealership with Mitsubishi Forklift.”
IsThe trial judge noted that defendant Harrison provided a fleet of forklifts, spare parts, and a mechanic, guaranteed a lease on the building for a year, provided Mr. Kibodeaux a salary and expenses, loaned her experience, and was to provide all operating funds for the business for a year. These conclusions were not clearly wrong; indeed, each was conceded by Ms. Kibodeaux, who further admitted that defendants would pay for the forklifts showcased on the Lake Charles premises, yet the Lake Charles company would receive half or all of the rental income from them. Moreover, Mr. Kibodeaux stated that he had visited Baton Rouge for training purposes at least three or four times and that Ms. Harrison had ventured to Lake Charles on several occasions to market forklifts, sometimes in the company of Mr. Kibodeaux.
Finally, although the contractual term “subfranchise dealership” was perhaps inart-fully used, we cannot say the trial judge erred in determining that Ms. Harrison made a reasonable effort to comply with her obligation to plaintiff, regardless of whether it went so far as to offer to assist plaintiff in one day becoming a dealer independent of defendants. A former representative of Mitsubishi familiar with the transaction testified that he personally flew to Louisiana to confirm that the Kibodeauxs knew that the Lake Charles company would operate as a branch to Ms. Harrison’s Baton Rouge outlet and that they could not be guaranteed an independent dealership. They, like Ms. Harrison and many other dealers before them, would be free to apply for one in a year or two. We cannot say that the trial judge erred in accepting this testimony over the Kibo-deauxs, particularly since the Mitsubishi representative has no interest in the outcome of this litigation.
Conversion of Funds
Of the $40,000 invested by the Kibo-deauxs, Harrison placed $20,000 into the Baton Rouge corporation, $10,000 into a C.D., and used $10,000 personally. Plaintiff argues that Ms. Harrison’s failure to place the entire sum into the Lake Charles corporation amounts to conversion for which she is entitled to damages.
UThe Kibodeauxs maintain that they did not know defendant Harrison had appropriated the money for her personal use until the summer of 1985, when they were summoned to Baton Rouge and informed that the business was failing. According to Ms. Kibo-deaux, they did not ride out the year (and thereby at least receive Mr. Kibodeaux’s guaranteed salary) because they left the meeting with the definite impression that Ms. Harrison was trying to close the business. Becoming suspicious, at that time they demanded an opportunity to review the company’s records. This conflict arose following that disclosure.
We cannot say that the trial court erred in finding that Ms. Harrison in fact honored her end of the bargain and did not usurp the funds. Each of the parties to the enterprise conceded that the Lake Charles company was to maintain only $2,500 in its name and remit the balance to Baton Rouge, where the parties agreed all accounting was to occur. This is precisely what occurred. When the Lake Charles company needed cash or credit, it routinely turned to Baton Rouge for cash or credit enhancement. We do not find clearly erroneous the trial judge’s conclusion that the remittances between Lake Charles and Baton Rouge cancelled each other out, the result of hemorrhages in the Lake Charles business: regardless of where Ms. *506 Kibodeaux’s $40,000 was initially placed, it or a like sum was found to have winded its way back to the Lake Charles endeavor.
Importantly, it is obvious that the Lake Charles company would have fared no better even had the $40,000 been placed directly into the Lake Charles accounts. The report of the corporation’s liquidator indicated that Ms. Harrison had invested some $37,000 in the Lake Charles enterprise during its first six months alone, to cover Mr. Kibodeaux’s monthly salary ($2,000) and expenses ($250), rental expenses ($600), secretarial and mechanic’s salaries. The paltry balance remaining in the company’s coffers took into account the firm’s gross income prior to that time. Exclusive of inventory costs borne by defendants and the salary Ms. Harrison might have drawn but did not, the Lake Charles enterprise incurred monthly | Bexpenses of some $6,000, an amount roughly equal to the $36,000 in gross revenues the company earned during its roughly six month existence. Taking these figures into account, we cannot say the trial judge erred.
Finally, the record amply supports the conclusion that the defendants bent over backwards to assist the fledgling enterprise survive its first year. The Mitsubishi representative who was familiar with the parties’ interest in opening a Lake Charles branch of the Baton Rouge establishment testified that there is no way the Lake Charles branch could have opened but for the expertise and financial guarantees of defendants, the value of which he placed at well in excess of $40,-000.
Securities Questions
Next, we consider the securities violations alleged by plaintiff. We do not find clearly wrong the trial judge’s adoption of defendants’ version of events. Ms. Harrison stated that she did not guarantee income in excess of Ms. Kibodeaux’s initial $40,000 investment. Ms. Kibodeaux admitted that no actual guarantees were made that the Lake Charles company would profit, only that all of the parties had every expectation that it would. Thus we find no violation of the Business Opportunity Sellers and Agents Act. LSA-R.S. 51:1821 et seq.
Nor do we find clearly wrong the trial judge’s finding that defendants were free of fraud or deception. Therefore we find no breach of the Louisiana Unfair Trade Practices and Consumer Protection Act, LSA-R.S. 51:1401 et seq., or of the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq., or of Rule 10b-5.
Since there were fewer than thirty-five shareholders and no mass-marketing of shares, the private sale of stock is exempt by rule (LAC 64:707) promulgated pursuant to LSA-R.S. 51:709(15), and by the Securities Act of 1933.
Finally, we do not find clearly wrong (or inequitable) the trial judge’s conclusion that defendants not only provided services but guaranteed a legion of the Lake Charles entity’s obligations and provided a host of support services in exchange for a half-fnter-esQ in the Lake Charles entity. Thus, we find no merit to plaintiffs last contention, that Ms. Harrison was not entitled to shares of the corporation under LSA-R.S. 12:52(C). We note that the outcome would have been no different had Ms. Harrison not offered, or had she (or an unrelated entity) demanded payment for the necessary services extended the fledgling enterprise that were not contemplated by the initial agreement between the parties. This company was simply un-dercapitalized.
Conclusion
The trial court’s judgment is affirmed. Both parties were found to have completed their ends of the bargain. Ms. Kibodeaux’s $40,000 investment inured to the benefit of the Lake Charles enterprise, although circuitously. Had the enterprise been successful, there is no reason to believe that both parties would not have profited. Businesses often fail without fraud or artifice, and the trial judge concluded that this was such an occurrence. Finding no error on his part after an exhaustive review of all the evidence under the rules of appellate review, we affirm his findings, at appellant’s costs.
AFFIRMED.